**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| TONYA FREERKS, Surviving Spouse of Bruce James Freerks, Plaintiff, vs. CAROLYN W. COLVIN, Acting Commissioner of Social Security, Defendant. | No. C14-3082-CJW **MEMORANDUM OPINION AND ORDER** |

_____

The claimant, Bruce James Freerks, passed away on January 30, 2016. Doc. 15 at 1. Plaintiff, the surviving spouse of claimant, represents the claimant in this matter. The plaintiff, on behalf of the claimant, seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying claimant's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Plaintiff contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that claimant was not disabled during the relevant time period. For the reasons that follow, the court affirms the Commissioner's decision.

## I.    BACKGROUND

Claimant was born in 1967, had completed three years of college, and had past work as a quality inspector. AR 180, 185. He filed an application for DIB on March 16, 2012, alleging a disability onset date of November 1, 2011. AR 139–40. He

contended that he was disabled due to arthritis, a deformed ankle, legal blindness in one eye, acute arthritis caused by birth defect, and glaucoma.  AR 184.  The Commissioner denied his claims on April 23, 2012.  AR 81–84.

Claimant requested reconsideration on April 29, 2012, which the Commissioner denied on July 11, 2012.  AR 85, 87–90.  He then requested a hearing before an Administrative Law Judge (ALJ) on July 24, 2012, and ALJ David G. Buell conducted a hearing on August 28, 2013, at which claimant and a vocational expert (VE) testified.  AR 27–55, 93–94.  On November 7, 2013, the ALJ issued a decision denying claimant's claim.  AR 7–19.

Claimant sought review from the Appeals Council, which denied his request on November 7, 2014.  AR 1–6, 26.  The ALJ's decision thus became the final decision of the Commissioner.  AR 1–3; 20 C.F.R. § 404.981.[1]

Claimant filed a complaint (Doc. 3) in this court on December 19, 2014, seeking review of the ALJ's decision.  On January 13, 2015, with the consent of the parties (Doc. 6), the Honorable Mark W. Bennett transferred this case to a United States Magistrate Judge for final disposition and entry of judgment.  The parties have briefed the issues and the matter is now fully submitted.


## II.     DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

---

[1] SSA Appeals Council Rev., 20 C.F.R. § 404.981 (2016).

period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.[2] An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).[3]

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007).[4] First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. *Id.* § 404.1572(a).[5] "Gainful" activity is work done for

---

[2] 42 U.S.C. §§ 423(d)(1)(A) (2015), 1382c(a)(3)(A) (2015); SSA Definition of Disability, 20 C.F.R. §§ 404.1505 (2016), 416.905 (2016).

[3] SSA Vocational Considerations, 20 C.F.R. §§ 404.1566(c)(1)-(8) (2016), 416.966(c)(1)-(8) (2016).

[4] SSA Evaluation of Disability, 20 C.F.R. §§ 404.1520 (2016), 416.920 (2016).

[5] SSA Substantial Gainful Activity, 20 C.F.R. § 404.1572(a) (2016).

pay or profit, even if the claimant does not ultimately receive pay or profit. *Id.* §
404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the
Commissioner looks to the severity of the claimant's physical and medical impairments.
If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if "it does not
significantly limit your physical or mental ability to do basic work activities." 20 C.F.R.
§ 404.1521(a); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a); *Kirby*, 500
F.3d at 707.[6]

The ability to do basic work activities is defined as having "the abilities and
aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These
abilities and aptitudes include: "(1) physical functions such as walking, standing, sitting,
lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing,
hearing, and speaking; (3) understanding, carrying out, and remembering simple
instructions; (4) use of judgment; (5) responding appropriately to supervision, co-
workers, and usual work situations; and (6) dealing with changes in a routine work
setting." *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S.
137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will
determine the medical severity of the impairment. If the impairment meets or equals one
of the presumptively disabling impairments listed in the regulations, then the claimant is
considered disabled regardless of age, education, and work experience. 20 C.F.R. §§

---

[6] SSA Evaluation of Disability, 20 C.F.R. § 404.1521(a) (2016); *see also id.* § 416.921(a)
(2016).

404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work then he is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).[7] Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1).[8] "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* §§ 404.1545(a)(3), 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there

---

[7] SSA Residual Functional Capacity, 20 C.F.R. §§ 404.1545(a)(4) (2016), 416.945(a)(4) (2016).

[8] SSA Vocational Considerations, 20 C.F.R. § 416.960(b)(1) (2016).

is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.912(f), 416.920(a)(4)(v).[9] The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* §§ 404.1545(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.[10]

## III.   THE ALJ'S FINDINGS

The ALJ made the following findings:

---

[9] SSA Evidence, 20 C.F.R. § 416.912(f) (2016).

[10] SSA Medical Conditions, 20 C.F.R. § 404.1535 (2016); SSA Drug Addiction and Alcoholism, 20 C.F.R. § 416.935 (2016).

(1)     The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

(2)     The claimant has not engaged in substantial gainful activity since November 1, 2011, the alleged onset date (20 C.F.R. § 404.1571 *et seq*.).

(3)     The claimant has the following severe impairments: glaucoma with monocular vision, residuals of a left ankle surgery with non-union, and obesity (20 C.F.R. § 404.1520(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

(5)     After careful consideration of the entire record, the undersigned finds that the claimant has the Residual Functional Capacity to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a).  He can occasionally stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; needs a work environment where he is not exposed to moving machinery or work at unprotected heights due to poor vision; has no useful vision in his left eye, including no peripheral vision on the left or depth perception; can frequently use near visual acuity with the right eye; and needs to avoid walking on uneven surfaces.

(6)     The claimant is unable to perform any past relevant work.  (20 C.F.R. § 404.1565).

(7)     The claimant was born on August 6, 1967, and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  The claimant subsequently changed age category to a younger individual age 45-49.  (20 C.F.R. § 404.1563).

(8)     The claimant has at least a high school education and is able to communicate in English. (20 C.F.R. § 404.1564).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41; 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and Residual Functional Capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 404.1569, 404.1569(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2011, through the date of this decision. (20 C.F.R. § 404.1520(g)).

AR 10–19. To render his decision regarding claimant's residual functional capacity, the ALJ relied on the following medical opinions in the record: (a) considerable weight was given to the opinions of nonexamining, state agency consultants Russell Lark, Ph.D., Jan Hunter, D.O., and Laura Griffith, D.O.; (b) partial weight was given to treating sources Andrew J. Pugely, M.D., and Phinit Phisitkul, M.D.; and (c) little weight was given to the opinion of consultative examiner John E. Williams, Ph.D. AR 17.

Here the court summarizes these medical opinions.

<u>Dr. Russell Lark, Ph.D.</u>

Dr. Lark is a nonexamining, state agency consultant. In July 2012, Dr. Lark found that claimant was not disabled. AR 72–73. Dr. Lark determined that claimant had non-severe Adjustment Disorder with Depressed Mood, no mental limitations, and intact memory, but had difficulty handling stress. AR 73. Dr. Lark based his finding on a

preponderance of the evidence (citing to tests performed in March, April, and June of the year 2012). *Id.* The ALJ gave Dr. Lark's medical opinion considerable weight. AR 17.

<u>Jan Hunter, D.O.</u>

Dr. Hunter is a nonexamining, state agency consultant. In April 2012, Dr. Hunter determined claimant was not disabled. *See generally* AR 56–65. She based her finding on vision testing (including the Goldman test) at UIH on February 23, 2011, which indicated claimant had distance VA (visual acuity measurement) with correction (with glasses) of 20/40 OD (right eye) and 20/100 OS (left eye). AR 63. And subsequent vision testing at UIH, on January 12, 2012, indicated claimant's distance VA with correction was 20/40 +1 OD with pinhole to 20/20 +3, but OS was hand motion only. AR 63. Dr. Hunter summarized these results as indicating good vision in the right eye sufficient to "see well enough to perform most activities." AR 63. Dr. Hunter also found claimant showed no muscle wasting and exhibited good recovery from his ankle surgery. AR 65. The ALJ gave Dr. Hunter's medical opinion considerable weight. AR 17.

<u>Laura Griffith, D.O.</u>

Dr. Griffith is a nonexamining, state agency consultant. In late May 2012, Dr. Griffith found that claimant was not disabled. *See generally* AR 76–79. Dr. Griffith found claimant's allegation of pain credible, and affirmed Dr. Hunter's determination from April 20, 2012, that claimant's ankle post-surgery was recovering as expected and that claimant should be capable of full time sedentary employment by November 2012. AR 77. The ALJ gave Dr. Griffith's medical opinion considerable weight. AR 17.

<u>Phinit Phisitkul, M.D. and Andrew J. Pugely, M.D.</u>

Dr. Phisitkul and Dr. Pugely are treating sources. On April 12, 2012, Dr. Phisitkul saw claimant for his five month post-left foot reconstruction surgery visit. AR

409. Dr. Phisitkul explained to claimant that it was "unlikely [he] will ever be able to go back to working 8 hours a day on his feet and doing heavy lifting. He will likely only be able to do sedentary work or light duties, even after his foot is well healed." *Id.* The ALJ directly cited the clinic note from May 10, 2012, excerpted below, as follows:

> The patient should progress to full weightbearing. He may bear 75% weight with the help of crutches . . . . We recommend the patient be off work for another weeks [sic] and then transition back to work part-time, 4 hours per day for the first week, 6 hours per day for the second week, 8 hours per day for the fourth week. He will have the following restrictions: No ladders and occasional stairs and no major heavy lifting. The patient will return to clinic in roughly 4-6 weeks' time for reevaluation of his ability to work.

AR. 419. The ALJ also cited to Dr. Phisitkul's letter on August 21, 2012, stating that "[w]e would also keep his work restriction to less than 30 minutes of standing at a time." AR 431. The ALJ gave the medical opinions of Dr. Phisitkul and Dr. Pugely partial weight. AR 17.

John E. Williams, Ph.D.

John E. Williams is a consultative examiner. AR 17. John Williams is a licensed psychologist in Iowa. AR 396. He evaluated claimant's mental status on June 12, 2012. AR 392. Dr. Williams found that claimant appeared "in tact [sic] cognitively and demonstrated no difficulties related to the mental status examination . . . . His thought process was logical, and his short-term memory appeared intact . . . his ability to handle stress appears some-what limited." AR 395. John E. Williams recommended that claimant seek psychotherapy to deal with his current limitations and family stress. *Id.*

Lastly, Dr. Williams gave claimant a Global Assessment of Functioning (GAF) score of 55.[11] AR 396. The ALJ gave this medical opinion little weight. AR 17.

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").[12] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir.

---

[11] Court notes that a GAF score of 55 is considered *moderate symptoms* and does not fall into the other GAF categories of *serious symptoms*, *major impairments*, *delusional*, *some danger to self or others*, or *persistent danger to self or others*. *See Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) (quoting *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed.1994)).

[12] 42 U.S.C. § 405(g) (2015).

2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.") (internal citation omitted).

## V. DISCUSSION

The court now examines whether the Commissioner's denial of benefits is supported by substantial evidence on the record as a whole. *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000). Claimant raises three issues before the court. He claims

that: (1) a remand is necessary to consider the post-hearing opinions of his Ophthalmologist, Dr. Wallace Alward; (2) the ALJ failed to properly apply the *Polaski* factors to his subjective complaints about the intensity, persistence, and limiting effects of his symptoms; and (3) the ALJ erred in relying on the VE's response to an incomplete hypothetical question. The court addresses each issue in turn.

### A. Claimant Argues that Remand for Consideration of the Opinions of Claimant's Treating Ophthalmologist, Dr. Wallace Alward, M.D., is Necessary

Claimant argues that a remand to the ALJ is necessary to consider the new medical statements by Dr. Alward (hereinafter new evidence) obtained post-hearing. Furthermore, claimant argues that Dr. Alward is a treating source, and thus, the Commissioner should have given Dr. Alward's opinion controlling weight. Doc. 11 at 17–19. Claimant also argues that the ALJ failed his independent duty to fully develop the record by not requesting additional testimony from Dr. Alward prior to the hearing. *Id.* at 18.

Approximately two and a half months after the ALJ issued his decision to deny benefits on November 7, 2013, Dr. Alward's new evidence was submitted to the Appeals Council on January 27, 2014. AR 1–4. On November 7, 2014, the Appeals Council issued a notice denying claimant's request to review the ALJ's decision. AR 1–9. The Appeals Council, under agency regulations, must consider additional new and material evidence relating to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b). When "the Appeals Council considers the new evidence but declines to review the case, we [the court] review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision." *Nelson v. Sullivan,* 966 F.2d 363, 366 (8th

Cir. 1992) (internal citation omitted). If the Appeals Council considers the new and material evidence and yet denies review, then the AJL's decision transforms into the Secretary's final decision. *Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995). At that point, the court no longer may review the Appeals Council's action, which becomes "non-final agency action." *Id.* "At this point, our [the court's] task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence deemed material by the Appeals Council that was not before the ALJ." *Id.* To be new, evidence needs to be "more than merely cumulative of other evidence in the record." *Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008) (quoting *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000)). And evidence is material when "it is relevant to claimant's condition for the time period for which benefits were denied." *Id.* The court in *Mackey*, illuminating the Eighth Circuit Court of Appeals' approach to new post-hearing evidence, writes: "[s]ome circuits simply refuse to consider such tardy evidence as a basis for finding reversible error . . . . But we do include such evidence in the substantial evidence equation." *Mackey*, 47 F.3d at 953.

The court finds Dr. Alward's new evidence is both *new* and *material* as the Appeals Council defines such terms. First, Dr. Alward's statements are *new* since they were not available to the ALJ at the hearing but pertain to claimant's visual impairment, which was at issue in claimant's disability hearing. *Lamp*, 531 F.3d at 632. Specifically, Dr. Alward's new evidence includes a new visual acuity (VA) measurement, namely 20/100-2 with glasses, for claimant's right eye. AR 639–40. Such VA measurement was not presented to the ALJ at the hearing. Whether the new evidence is *material* is a closer question. The new evidence must be relevant to claimant's visual impairment as it existed until November 7, 2013 (when the ALJ issued his decision). The last visit claimant made to Dr. Alward, this court found in the record, was on June 4, 2013. AR 544. On that June visit, Dr. Alward gave claimant's right eye a VA measurement of

14

20/50+1. *Id.* Then suddenly, without any evidence of a subsequent visit by claimant to Dr. Alward in the record, Dr. Alward's new evidence dated December 9, 2013, gives claimant's right eye a VA measurement of 20/100-2 (which indicates worse vision). AR 639. Furthermore, the December 2013 new evidence includes a comment that "I [Dr. Alward] have enclosed a copy of his [claimant's] last clinic note and his most recent visual field." AR 640. The court is perplexed as to which visit's clinic note Dr. Alward refers, as Dr. Alward's last clinic visit documented in the administrative record is from June 2013 (again where a VA measurement of 20/50+1 was found). Regardless, the court finds, despite these factual perplexities in the record, that Dr. Alward's new evidence dated December 2013 and January 2014 *could pertain* to the relevant period of June 5, 2013 (a day after the last recorded visit to Dr. Alward where a VA measurement of 20/50+1 was determined) to November 7, 2013 (the date the ALJ made his decision). Thus, the court considers the new evidence to be *material*. As the court finds Dr. Alward's new evidence to be both *new* and *material*, such evidence becomes part of the administrative record before the court. *Nelson*, 966 F.2d at 366. Furthermore, the court notes that the parties agree that claimant's new evidence submitted to the Appeals Council is part of the record before this court. Doc. 11 at 15, Doc. 12 at 5.

### 1. Treating Sources and Controlling Weight

The court here reviews the applicable law for medical sources qualifying as treating sources. A *treating source* is an acceptable medical source who has an ongoing treatment relationship providing medical treatment or evaluation to the claimant; however, such relationship may not exist solely to establish claimant's disability, 20

C.F.R. § 404.1502.[13]  Under agency regulations, an *acceptable medical source* includes licensed physicians, either medical or osteopathic doctors.  *Id.* § 404.1513(a).[14]  An ongoing treatment relationship is generally established when the medical evidence is consistent that the claimant has seen "the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)."  *Id.* § 404.1502.

Under agency regulations, the ALJ evaluates and weighs a medical opinion by considering the following factors: (1) examining relationship (generally greater weight is given to a source who has examined the claimant; (2) length, nature, and extent of the treatment relationship; (3) supportability (the more relevant evidence that exists to support an opinion, then the more weight such opinion gets); (4) consistency (the more consistent that the opinion is with the record as a whole, then the more weight it is given); (5) specialization (great weight given to specialists in their medical areas of specialty); (6) other factors.  *Id.* § 404.1527(c)(1)-(6).[15]  Generally, a treating source gets controlling weight if not contradicted by other substantial evidence on the record.

The claimant alleges that Dr. Alward is a treating source and that the Commissioner should have afforded his statements controlling weight.  Doc. 11 at 17–19.  For the reasons given herein, the court agrees that Dr. Alward is a treating source

---

[13] SSA General, 20 C.F.R. § 404.1502 (2016).

[14] SSA Evidence, 20 C.F.R. § 404.1513(a) (2016).

[15] SSA Medical Considerations, 20 C.F.R. § 404.1527(c)(1)-(6) (2016).

and that his medical opinions, consistent with the substantial evidence on the record, should be given controlling weight.

Dr. Wallace Alward is a licensed medical doctor. AR 404. Thus, he satisfies the "acceptable medical source" requirement mandated in 20 C.F.R. § 404.1513(a). The record also establishes that claimant saw Dr. Alward repeatedly prior to filing for disability. According to forms completed by Mrs. Tanya Freerks on claimant's behalf, Dr. Alward began treating claimant in 1980 or 1981. AR 208 (for the 1980 date), 187 (for the 1981 date).[16] The purpose of claimant's visits were to evaluate and treat claimant's juvenile glaucoma. AR 404. The record lists claimant's clinic visit dates with Dr. Alward, as follows: January 17, 2012; July 19, 2012; August 21, 2012; October 24, 2012; October 30, 2012; November 27, 2012; December 7, 2012; February 3, 2013; and June 4, 2013. On October 24, 2012, Dr. Alward was the attending staff surgeon in claimant's placoemulsification, new lens implant, and cyclophotocoagulation surgeries. AR 523–29. As Dr. Alward is claimant's long-term, examining ophthalmologist, who has used his specialization to evaluate and treat claimant's juvenile glaucoma extensively, the court finds treating Ophthalmologist Dr. Alward's medical opinions should be given controlling weight if not contradicted by other substantial evidence on the record.

### 2. Court Finds That Dr. Alward's New Evidence is Vastly Comprised of Non-Medical Opinions

There is a category of certain opinions, even if rendered by acceptable medical professionals, which do not qualify as medical opinions. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). Opinions by treating medical professionals stating that an

---

[16] Dr. Alward wrote in his clinic visit comments that a Dr. Matt Pollanstrini treated claimant in the past. AR 523.

applicant is "unable to work" or "disabled" do not count as medical opinions. *Id.* (citing to *Stormo,* 377 F.3d at 806). Such opinions address an issue reserved solely for the Commissioner's discretion. *Id.* An ALJ may give limited weight to a treating source's opinion if such opinion only provides conclusory statements or is inconsistent with the substantial evidence on the record. *Chamberlain v. Shalala*, 47 F.3d 1489, 1489–94 (8th Cir. 1995). For example, in *Chamberlain v. Shalala,* the Eighth Circuit Court of Appeals found that an ALJ properly discounted a treating physician's conclusory statement that claimant was unable to perform any job requiring stooping or bending when the following facts existed: claimant's x-rays showed no abnormalities; another doctor found claimant could occasionally stoop or bend; at the hearing claimant himself testified when asked about his ability to bend or stoop that he only had issues using the toilet; and the physician did not cite any objective medical tests, diagnostic data, or even discuss claimant's deceased range of motion. *Id.* at 1493–94.

The court finds that Dr. Alward's new evidence should be given only limited weight. First, the court conducts a careful review of Dr. Alward's new evidence. Claimant submitted the following two exhibits to the Appeals Council: (1) Exhibit 20E: Representative Letter (by attorney Hugh M. Field) dated January 27, 2014, introducing Dr. Alward's new evidence and asking the Appeals Council to expedite the case if possible; and (2) Exhibit 21F: Medical Source Statements from Wallace L. M. Alward, M.D., dated November 26, 2013, and January 2, 2014. AR 5. Dr. Alward's two opinions comprise the substantive portion of the new evidence submitted. Such new evidence submitted to the Appeals Council includes the following:

*(a) Statement dated Dec. 9, 2013[17]*

Here Dr. Alward answers, in writing, questions from claimant's attorney, Hugh M. Field. AR 639–41. Dr. Alward writes that claimant's diagnosis was "Juvenile open angle glaucoma." AR 639. And Dr. Alward writes that claimant would "not regain vision," and that "[h]e has surgery scheduled that will hopefully stop and slow the loss." AR 639. Also, Dr. Alward answers that claimant's vision in his right eye, after best correction, was "20/100-2" and claimant's vision in his left eye, after best correction was "20/400." AR 639–40. Regarding claimant's ability to do sedentary work and work with small objects, Dr. Alward answers that "[claimant] has very poor vision and an extremely constricted visual field. He is nearly blind in the left eye and is missing his entire upper field in the right. Working with any fine printed materials would be very hard." AR 640.

*(b) Statement dated January 2, 2014*

Here Dr. Alward's answers questions from claimant's attorney, Hugh M. Field. AR 642–43. Dr. Alward writes, "I do not feel that [claimant] has sufficient vision to work at any job that requires reading." AR 643. And in response to a question about claimant's ability to work as an order clerk, Dr. Alward answers that "I believe that any job that requires reasonable vision would be beyond his abilities. Besides his very poor central vision he has a severely constricted vision field." AR 643. In response to claimant's ability to work as a charge account clerk, Dr. Alward writes "Not possible in my opinion." AR 642. Also, Dr. Alward writes that "[claimant] has remarkably constricted peripheral vision. That makes ambulation a challenge. I [sic] leaves him with terrible vision in low light. He also needs to scan to read a page of text which makes this very challenging." AR 643.

---

[17] This represents the court's best understanding of Dr. Alward's handwritten opinions.

Again, an ALJ may give a treating source's opinion limited weight if such opinion only provides conclusory statements or is inconsistent with the substantial evidence on the record. *Chamberlain*, 47 F.3d at 1489–94. Here, the court finds it was appropriate for the Commissioner to give Dr. Alward's new evidence limited weight. The court divides the new evidence into two segments for its analysis, as follows: (1) medical opinion—consisting only of Dr. Alward's statement that claimant's VA measurement CC is 20/100-2 OD and 20/400 OS (AR 639–40); and (2) conclusory statements—the rest of the new evidence.

The court finds the first segment, the VA measurements, to be a medical opinion. Specifically, these measurements include a VA measurement with corrective glasses to be 20/100-2 (right eye) and 20/400 (left eye). AR 639–40. The court finds this statement to be a medical opinion, rendered by an ophthalmologist in his area of medical expertise. Yet, the court finds the Commissioner appropriately afforded this medical opinion limited weight, not controlling weight, given its inconsistency with the substantial evidence on record regarding claimant's right eye VA measurements. These inconsistencies include, as follows: (1) Dr. Mark Wilkinson's visit notes on August 21, 2012, that distance VA with correction was 20/80-1 for claimant's right eye, and near visual acuity without correction was .6M continuous text print at 6" (AR 438); (2) prior inconsistent medical opinion by Dr. Alward from claimant's visit on February 12, 2013, when Dr. Alward determined a distance VA with correction of 20/40+1 for claimant's right eye—several months after the cataract surgery claimant alleged caused the deterioration of his right eye's near acuity (AR 556); and (3) prior inconsistent medical opinion by Dr. Alward from claimant's visit on June 4, 2013, (the last visit to Dr. Alward documented in the record) where Dr. Alward determined a distance VA with correction of "20/50+1" for claimant's right eye (AR 542).

The second segment—conclusory statements—is the rest of the new evidence, absent the VA measurements. The court finds this segment to consist of mere conclusory statements that the Commissioner could reasonably conclude deserved limited weight. Similar to the ALJ's treatment of the treating physician in *Chamberlain*, the court finds Dr. Alward's statements here to be solely conclusory. *Chamberlain*, 47 F.3d at 1489–94. Here, Dr. Alward's new evidence does not cite any objective medical tests or diagnostic data in the record (in his December 2013 statement, Dr. Alward comments that he enclosed "a copy of his [claimant's] last clinic note and his most recent visual field" *see* AR 640; but the court cannot locate any supporting visit notes in the record). Substantial evidence in the record contradicts Dr. Alward's assertion that claimant could not perform a job that required reading or handling of small objects. Substantial evidence that contradicts Dr. Alward's conclusory statements includes, as follows: (1) Dr. Jan Hunter's opinion from April 2012, that claimant's right eye vision with correction was good enough to "perform most activities" (AR 65); (2) Dr. Wilkinson's visit notes on August 21, 2012, that claimant's near visual acuity without correction was .6M continuous text print at 6" for his right eye (AR 438); (3) claimant's visit with Dr. Alward, on February 12, 2013, where Dr. Alward determined a distance VA with correction of 20/40+1 OD and found that claimant's glaucoma and visual fields were stable (AR 556); (4) Dr. Alward's clinic notes from June 4, 2013, that claimant's right eye did great on the Humphrey test and stating that claimant's glaucoma was stable and claimant's right eye did "great" (AR 544); (5) claimant's own testimony that on May 7, 2013, he changed his lawnmower's spark plug (AR 604); and (6) claimant's additional testimony at the hearing (again months after the cataract surgery that allegedly significantly decreased his right eye vision) that he watched his 46 inch television, drove up to 35 mph in town during the daytime, sometimes drove his kids to the local park, could write checks, used his home computer and laptop with an increased font, and

watched movies with his family in theatres (AR 36–47). The court finds that Dr. Alward's non-medical opinions here are both unsupported and contradicted by the substantial evidence. The court finds Dr. Alward's conclusory statements invaded the sole discretion of the Commissioner, who is tasked with determining "disability" status under the Social Security Act. *Ellis*, 392 F.3d at 994. Thus, the court finds that the Commissioner could properly afford limited weight to the segment of the new evidence consisting of conclusory statements. As such, it does not undermine the substantial evidence on the record supporting the ALJ's decision to deny benefits.

Overall, the new evidence (both the medical opinion and the conclusory statements) deserve limited weight. As such, they do not undermine the ALJ's decision to deny benefits, which remains supported by substantial evidence. The court notes that the ALJ here did, in fact, rely on Dr. Alward's prior consistent medical opinions as claimant's treating ophthalmologist to examine claimant's severe physical impairment of juvenile glaucoma. AR 16, *see* exhibit 17F and 19F.

### 3. ALJ's Independent Duty to Fully Develop the Record

Claimant argues that the ALJ failed his independent duty to fully develop the record by not requesting additional testimony from Dr. Alward prior to the hearing. AR 18. The court finds that the ALJ did not fail his independent duty.

Social security disability hearings are non-adversarial proceedings. *Stormo,* 377 F.3d at 806. "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (internal citation omitted). The ALJ's duty exists even when an attorney represents a claimant. *Id.* Yet, the ALJ's duty to fully develop the record does not include seeking "additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Goff*, 421 F.3d at 791

(citing to *Stormo,* 377 F.3d at 806). Also, the ALJ is not required to discuss all submitted evidence and the ALJ's failure to cite to evidence does not mean such evidence was not considered. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (internal quotation and citation omitted).

Here, as claimant's attorney noted, a non-attorney representative, Ms. Allison Belt, represented claimant for his disability insurance benefits application and during the ALJ hearing. Doc. 11 at 10, AR 10. Given the substantial evidence, the court finds that there was no crucial issue left undeveloped, so the ALJ was not required to seek additional clarifying statements. Indeed, all of Dr. Alward's clinic notes about claimant's juvenile glaucoma before the ALJ were consistent (*see* exhibit 10F, 17F, 19F). Furthermore, the other relevant medical opinions on the record, like Dr. Mark Wilkinson's opinion, were also consistent with Dr. Alward's medical opinions on record. *See* AR 438. The only inconsistent statements were issued post-ALJ decision (November 2013) by Dr. Alward in December 2013, and January 2014. This new evidence was deemed to deserve only limited weight. Also here, the ALJ had no suspicion of inauthenticity for any treating source's opinion, *see Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (court found that ALJ failed his duty to develop the record where the ALJ questioned the authenticity of data by a treating source and simply rejected it and relied on a non-treating, non-examining physician without first determining the authenticity of the treating source's opinion). Such facts are not present here. Thus, the court finds that the ALJ did not fail his duty to investigate by failing to request additional statements from Dr. Alward.

### B. Claimant Argues that the ALJ Did Not Properly Evaluate His Subjective Allegations About Intensity, Persistence, and Limiting Effects of His Symptoms

Claimant argues that the ALJ did not properly consider the relevant *Polaski* factors. Furthermore, claimant argues that the ALJ erroneously analyzed the one factor the ALJ did consider, namely claimant's daily activities. AR 15–17.

### 1. Applicable Standards

Under the *Polaski* factors, an ALJ must consider the "claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) claimant's daily activities; (2) duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). In *Lowe*, the Eighth Circuit Court of Appeals stated, "[t]he ALJ was not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (internal citation omitted). If the ALJ gives a good reason for discrediting a claimant's credibility, then the court will defer to the ALJ's judgment "even if every factor is not discussed in depth." *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001).

The court also notes that "[a]lthough the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (internal citation omitted). "Moreover, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints." *Id.* "Where objective evidence does not fully support the degree of severity

in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal citation omitted). In evaluating a claimant's subjective complaints of pain, an ALJ may rely on a combination of his personal observations and a review of the record to reject such complaints. *Lamp,* 531 F.3d at 632. However, the ALJ may not solely rely on his personal observations to reject such claims. *Id.* Thus "[s]ubjective complaints can be discounted [by the ALJ], however, where inconsistencies appear in the record as a whole." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (citing to *Polaski* opinion).

### 2. *Analysis*

The claimant argues that the ALJ's determination of claimant's credibility was not supported by "good reasons" or "substantial evidence," and that the ALJ's analysis "lacked the required detail." Doc. 11 at 21. Claimant cites to the ALJ's decision in the administrative record from page 15 to page 17. *Id.* Specifically, claimant argues that the ALJ failed to properly analyze claimant's subjective complaints about the significant limitations in his daily activities resulting from both his ankle impairment and his visual limitations. Doc. 11 at 21–24. Further, claimant argues that the only *Polaski* factor that the ALJ analyzed in detail was claimant's daily activities, which the ALJ allegedly misanalysed. *Id.*

At the hearing, the ALJ found that "claimant's allegations regarding the intensity, persistence, and limiting effects of his impairments are generally credible; however, to the extent his allegations are credible, they do not support a finding that he is "disabled" within the meaning of the Social Security Act." AR 17.

The court begins its review of claimant's subjective complaints at issue. The ALJ was required to consider all evidence related to (1) claimant's daily activities; (2)

claimant's duration, frequency, and intensity of his pain; (3) any precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of claimant's medication; and (5) claimant's functional restrictions. *Polaski*, 739 F.2d at 1322. The court again notes that "[i]f an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Renstrom*, 680 F.3d at 1065 (internal citation and quotation omitted). The court now turns to review the record and the ALJ's decision with the following yardstick in mind that "[claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards*, 314 F.3d at 966 (citing to *Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir. 2001)).

In making his disability determination, the ALJ considered multiple factors to evaluate claimant's subjective complaints in regards to claimant's (1) congenital ankle impairment; (2) juvenile glaucoma; and (3) the combined effect of claimant's obesity upon both his ankle and vision. Regarding claimant's congenital ankle impairment, the ALJ considered claimant's subjective complaints of pain (*see* AR 258 [People's Clinic of Butler City], 267 [University of Iowa Hospital and Clinics]), medical history including doctor visits related to claimant's ankle (*see* AR 258, 267, 314, 338, 503, 507, 538), ankle x-rays (*see* AR 271), medication management (*see* AR 258, 298, 332 [ibuprofen, raproxen, tadalafil, fentanyl]), surgical options available (*see* AR 267 [ankle arthroplasty]), recommended surgical revisions (*see* AR 267, 277, 536 [open ankle fusion after undergoing a medial malleolar left osteotomy, revision using hindfoot nail with bone graft from Synthes Reamer/Irrigator]), surgeries performed (*see* AR 296 [left foot percutaneous osteotomy of the calcaneus tuberosity, ankle and subtalar joint arthrodesis, and dorsal opening wedge osteotomy of the medial cuneiform by Dr. Phisitkul on 11/2/11]), externally applied devices used (*see* AR 333, 503, 507 [ankle-foot orthosis, weightbearing total contact casts, weightbearing AFO]), and unsatisfactory surgical results (see AR 325 [loosening of hardware post left foot reconstruction caused swelling

and foot pain]). *See generally* AR 16. After a thorough analysis of the record, the ALJ concluded that although claimant's congenital ankle impairment caused him longstanding discomfort, claimant remains available to perform sedentary work. AR 16.

Regarding claimant's juvenile glaucoma, the ALJ considered claimant's longstanding juvenile glaucoma diagnosis (*see* AR 263 [worse on left eye than right eye]); the legally blind status of his left eye (*see* AR 301, 302 [left eye vision declined in late 2011 likely due to progressive nerve fiber loss; lost central acuity in left eye]); cataracts (*see* AR 301 [in both eyes]); medication management (*see* AR 263, 309, 556 [Cosopt OU prior to October 2012, Brimonidine OS, Tafluprost OU]); doctor visits related to claimant's vision (*see* AR 309, 438, 572, 556 [on February 12, 2013, Dr. Alward wrote "glaucoma is stable. The intraocular pressures are within the target range. The optic nerves are stable and without evidence of hemorrhage. The visual fields are stable."]); surgical options available (*see* AR 302 [cyclophotocoagulation for left eye]); surgeries performed (*see* AR 572, 573 [on October 24, 2012,[18] claimant underwent a phacoemulsification to remove a cataract from his right eye, intraocular lens implant on his right eye, and a cyclophotocoagulation (laser treatment for glaucoma to reduce pressure) on his left eye]); and activities claimant reported being able to perform (*see* AR 200, 270, 323, 510, 36, 42, 43, 47, 35, 36, 44 [can pay bills, use a checkbook, visual exam by doctor on April 28, 2011, shows claimant could "read questions from our forms or newspaper," and at the hearing on August 28, 2013, claimant testified to watching movies in the theatre, watching television at home on 46 inch screen, driving in town at 35 miles per hour or less during the daytime, occasionally driving kids to the park,

---

[18] Court notes that ALJ had misidentified the date of claimant's eye procedures. They were performed in October 2012, and not in March 2012. *See* AR 572–73. Note that this minor error does not undermine the evidence supporting the ALJ's decision to deny benefits.

watching his daughter at her volleyball games, although several times he had difficulty picking her out of the group, doing dishes, using his laptop and computer at home where he increases the font size, and having his wife fill out forms for him]).  Although not explicitly mentioned in the ALJ's written decision, the court notes that the ALJ heard and considered claimant's in-person testimony at the disability hearing where claimant testified that his right eye's near vision declined after his October 2012 cataract surgery and that the doctor was not happy with the results.  AR 43.[19]  Specifically, claimant said "since my cataract surgery, my near vision has really deteriorated . . . .  They did the surgery to improve my vision and it made it worse . . . .  But he [the eye doctor] said that he wasn't happy with the results."  *Id.*  After a thorough analysis of the record, the ALJ concluded that although claimant has juvenile glaucoma, claimant retained the ability to "frequently use near visual acuity."  AR 16.

Regarding claimant's obesity, the ALJ considered that claimant is 6'3" tall and weighs 240 pounds and has a BMI of 30.0 (30.0 and above is obese).  AR 184, 17.  The ALJ considered the effect claimant's obesity had in combination with his juvenile glaucoma and congenital ankle impairment.  AR 16–17.

The court notes that the new evidence by Dr. Alward does not undermine the ALJ's credibility determination.  Using the touchstone that the ALJ need not methodically discuss every *Polaski* factor, the court finds, given the above extensive review of the

---

[19] The court carefully read the transcript from the hearing.  Although, the transcript does not comprise the ALJ's conclusive fact determinations and explicit findings, the transcript shows the court the ALJ's thoroughness in hearing all of the claimant's claims (including claimant's claim of worsening near vision in his right eye after his October 2012 cataract surgery).  Having heard all of claimant's claims, the ALJ nonetheless determined that claimant was able to use frequent near visual acuity on his right eye.

record by the ALJ, the ALJ's credibility determination was supported by substantial evidence on the record as whole. *Lowe*, 226 F.3d at 972.

The court also now addresses additional arguments on the issue of credibility by both the claimant and the defendant. Claimant cites to *Rainey v. Department of Health and Human Services*, 48 F.3d 292, 293 (8th Cir. 1995), for the assertion that the ALJ must explain how activities of daily living are inconsistent with claimant's allegations of disabling symptoms. Doc. 13 at 4. Claimant argues that the ALJ failed to explain how his daily activities (*e.g.*, playing cards, attending church and sporting events, doing some household chores like dishes, getting children ready for school) contradict claimant's assertion that he could not "frequently use near visual acuity." Doc. 13 at 4; *see* Doc. 12 at 7–8. The court notes that *Rainey* was subsequently distinguished by the Eighth Circuit Court of Appeals in *Edwards v. Barnhart*, 314 F.3d at 966–67 (stating that the ALJ did explain the inconsistencies between claimant's activities and their subjective complaints when ALJ stated: "[claimant's activities] necessitate[] the ability to do a number of task and suggest[] a greater physical and mental capacity than asserted" and further noted there was weak objective medical evidence for claimant's functional limitations."). Such is the case here. After thoroughly reviewing the evidence, the ALJ explained that:

> Although the medical evidence supports a finding that the claimant experiences a bothersome level of leg pain, he was nevertheless able to perform sedentary work despite his ailment. Additionally, the record does not document the claimant's ankle impairment resulting in motor, sensory, reflex, or strength deficits consistent with an inability to function within the limitations described above . . . . Although the claimant has juvenile glaucoma, he retains the ability to frequently use near visual acuity . . . . Despite his deceased vision, the claimant reported being able to perform a variety of tasks consistent with an ability to work within the

> visual and environmental limitations described above. For
> example, he can read questions on printed forms and
> newspapers, writes checks, watches television, and drives for
> short distances . . . . Accordingly, the undersigned [the ALJ]
> has considered the combined effects of the claimant's obesity
> with the claimant's other impairments when reaching the
> findings herein. After a careful review of the record, the
> undersigned finds that the claimant's allegations regarding the
> intensity, persistence, and limiting effects of his impairments
> are generally credible; however, to the extent his allegations
> are credible, they do not support a finding that he is
> "disabled" within the meaning of the Social Security Act.

AR 16–17. The court finds that the above-quoted statements do constitute an adequate explanation by the ALJ as envisioned in *Edwards*. Thus, the ALJ did explain how claimant's daily activities are inconsistent with finding that claimant is "disabled" under the Social Security Act.

Defendant points out that claimant's return to work (which the ALJ noted) was inconsistent with claimant's claims of disability and cites to *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (stating that part-time work may demonstrate claimant's ability to perform gainful employment). The court finds the facts here distinguishable from those in *Harris*. In *Harris*, the Eighth Circuit Court of Appeals found that the ALJ properly rejected claimant Harris' subjective complaints of debilitating headaches in determining her RFC when claimant worked for 24 hours per week during the year. *Id.* at 930. Here, claimant unsuccessfully attempted to return to his fulltime work. AR 12, 16. From January to March 2012, claimant returned to his work (subject to temporary, special conditions of sedentary level fulltime). AR 16. In March 2012, when claimant returned to his normal, pre-surgery routine at work (standing for over eight hours per day), he reported that he stopped working due to leg pain. *Id.* The ALJ found that claimant had not engaged in substantial gainful activity since November 1, 2011; the ALJ

noted that claimant worked after the alleged disability onset date but "that work activity was an unsuccessful work attempt." AR 12. Thus here, unlike in *Harris*, claimant was not working part-time on the side but rather attempted, unsuccessfully, to return to his fulltime employment. The court rejects defendant's argument here and finds that this consideration of claimant's failed attempt to return to work actually weighs in favor of claimant's disability claim. Yet, despite this consideration, the court still finds there is substantial evidence on the record as a whole to not disturb the ALJ's decision to deny disability here. The court notes that it must exercise a deferential stance to the ALJ's credibility findings and apply the applicable legal standards.

### C. Claimant Argues that the ALJ Erred as a Matter of Law in Relying on the VE's Response to an Incomplete Hypothetical Question

The claimant alleges that the second hypothetical question asked by the ALJ to the VE (and the ultimate hypothetical relied on by the ALJ) did not fully describe claimant's visual limitations. Doc. 11 at 24.

### 1. Applicable Standards

The Eighth Circuit Court of Appeals succinctly stated that "[t]estimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision. Hypothetical questions should set forth impairments supported by substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments." *Jones*, 619 F.3d at 972 (internal quotation and citation omitted). Yet, the court notes that "[t]he ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011) (internal quotation and citation omitted).

## 2. *Analysis*

Since the specificity of the ALJ's hypothetical posed to the VE is being contested, the court examines its exact language. The court summarizes the ALJ's hypothetical question, asking the VE if jobs for such a person exist, as follows:

> [One] who has the past relevant work as we modified it during the hearing, on 18E, and ask you [the VE] to assume this worker has some functional limits which assume that he's limited to performing sedentary work as that term is defined in the DOT. This worker is able to occasionally stoop, crouch, kneel and crawl but cannot climb ladders, ropes or scaffolds . . . . In terms of a walking surface, obviously one needs to walk a little bit on the job, he needs a surface that's not uneven so I'm just going to say a typical indoor, carpeted, tile, wood floor, concrete something like that . . . [and such] a person could frequently use near acuity [ALJ cites to the fact that Freerks testified at the hearing to being able to write checks and drive in the daylight] with no limits other than lack of peripheral vision and a lack of depth perception and could read and handle small objects.

AR 48–50. In response to this hypothetical question, the VE listed three jobs that such a person described in the hypothetical could perform. She listed (1) unskilled order clerk; (2) charge account clerk; and (3) call out operator. AR 50–51. These jobs exist in significant numbers in the nation and in Iowa. AR 50–51.

This hypothetical question is supported by substantial evidence on the record. Here, the ALJ's hypothetical question included all of claimant's several limitations found to exist by the ALJ and set forth in his description of claimant's RFC. Based on the court's conclusion that the ALJ's findings of claimant's severe visual limitations was supported by substantial evidence on the record as a whole, the court finds the

hypothetical question proper. And thus, the VE's reply is further substantial evidence supporting the ALJ's decision to deny claimant's disability benefits. Again, during the hearing, the claimant testified that he could (a) write checks (even though he said this was a struggle); (b) drive in town during the daylight at 35 mph or less; (c) occasionally drive his children to the park; (d) use his laptop and home computer, although he has to increase the font size; (e) watch his 46 inch television; (f) go to the movies with his family. AR. 35–42, 47. Such testimony provides substantial evidence, in addition to the concurring medical opinions on record, that claimant could "frequently use near acuity" even after his October 2012 cataract surgery. Thus, the ALJ properly posed a hypothetical question to the VE here, which embodied all of the severe impairments the ALJ determined from the record. The ALJ was justified in relying on the VE's response to this hypothetical.

## VI. CONCLUSION

The court appreciates the fact that claimant had severe impairments that unfortunately caused him pain. After a thorough review of the entire record, the court concludes that the ALJ's decision to deny claimant's disability benefits is supported by substantial evidence on the record as a whole. Accordingly, the court **affirms** the decision of the ALJ. Judgment shall be entered in favor of the Commissioner and against claimant.

**IT IS SO ORDERED** this 31st day of March, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa